**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **NATURELLE ALEMAN**, *individually and on behalf of all others similarly situated,*<br><br>*Plaintiff,*<br><br>v.<br><br>**VOICE SEARCH LOCAL, LLC**,<br><br>*Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Case No.:** 7:26-cv-00027<br><br>**CLASS-ACTION COMPLAINT**<br><br>-and-<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS-ACTION COMPLAINT

Plaintiff, Naturelle Aleman ("Aleman" or "Plaintiff") individually and on behalf of all others similarly situated, files this Class-Action Complaint against Defendant Voice Search Local, LLC ("VSL" or "Defendant"). In support thereof, Plaintiff states as follows:

### NATURE OF THE CASE

1. Plaintiff brings this action individually and on behalf of all others similarly situated, seeking damages and any other available legal or equitable remedies resulting from the unlawful actions of Defendant. Defendant violated Plaintiff and the putative class-members' rights by failing to honor do-not-call requests and by placing pre-recorded voicemails to consumers without their prior express consent. Defendant also placed telephone solicitation calls to Plaintiff and the class members without first obtaining the proper registration certificate to make telephone solicitations. Those acts and omissions, which are described at length herein, were in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. and the TCPA's corresponding regulations promulgated by the Federal Communications Commission ("FCC") at

47 C.F.R. § 64.1200 *et seq.*, as well as § 302.101 *et seq.* of the Texas Business & Commercial Code.

## BACKGROUND ON THE TCPA

2. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights- specifically, the right to be left alone from unwanted telemarketing calls.

3. A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4. The TCPA provides protections for persons who receive prerecorded or artificial voice calls without the caller (or the company acting on the caller's behalf) first obtaining the recipient's prior express written consent to receive such calls. *See* 47 U.S.C. § 227(b)(1); 47 C.F.R. §§ 64.1200(a)(3), (f)(9). The penalty for violating these provisions is $500 per call and up to $1,500 per call placed in willful violation of the TCPA. 47 U.S.C. § 227(b)(3).

5. The TCPA and its accompanying FCC regulations, 47 C.F.R. § 64.1200(d) *et seq*., also afford protections for consumers whose rights are violated by telemarketers who fail to honor do-not-call requests.

6. 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d) provide that residential subscribers who instruct a telemarketer or seller to stop calling their number, and nonetheless receive additional calls from that seller, is entitled to recover a penalty of up to $500 per violative call, which can be trebled to $1,500 per call if the TCPA is willfully or knowingly violated.

7. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the Federal Communications Commission." Omnibus TCPA Order, 30 FCC Rcd.

7961, 7964 (F.C.C. July 10, 2015).

8. In fact, in 2021 alone, there were over five million complaints from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 5, 2022), https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

9. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, The Wall Street Journal, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

**JURISDICTION AND VENUE**

10. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

11. This Court also has supplemental jurisdiction over Plaintiff's state law claims, which involve a common nucleus of facts as her TCPA claims.

12. This Court has personal jurisdiction over Defendant, as Defendant systematically conducts business in the State of Texas.

13. Furthermore, Defendant knowingly and purposefully availed itself to the State of Texas when it contacted Plaintiff's phone number beginning with an "830" area code, which is associated with Texas.

14. A substantial portion of the events underlying this action occurred within this District.

15. Accordingly, venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

16. Plaintiff Naturelle Aleman is an individual who resides in Midland, Texas.

17. Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

18. Defendant Voice Search Local, LLC ("VSL") is a Florida corporation with its principal office address at 1701 SE Tiffany Ave, Suite 105, Port Saint Lucie, Florida 34952.

19. Defendant is a "person" as that term is defined by 47 U.S.C. §153(39).

20. Defendant acted through its employees, agents, vendors, contractors, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees and representatives.

## FACTUAL ALLEGATIONS

21. At all times relevant hereto, Plaintiff owned a cell phone, the number for which was (830) XXX-0432.

22. At all times relevant hereto, Plaintiff used that cell phone primarily for personal and residential purposes, such as speaking with friends and family.

23. In November of 2025, Defendant began repeatedly placing calls to Plaintiff's phone number, soliciting Defendant's business advertising and search engine optimization services.

24. In each call from Defendant answered by Plaintiff, the caller stated he or she was

calling from "Voice Search Local."

25. On November 11, 2025, after answering a call from Defendant, Plaintiff agreed to explore Defendant's marketing services for her business. However, when Defendant's services appeared unhelpful and Defendant continued to place unwanted telemarketing calls, Plaintiff promptly cancelled her relationship with Defendant and clearly and unequivocally told Defendant to stop calling.

26. Nevertheless, since Plaintiff's initial do-not-call request on November 11, 2025, Defendant has placed over one hundred and fifty (150) phone calls to Plaintiff's number.

27. Plaintiff knows the calls were from Defendant because in each call she answered the caller disclosed s/he was calling from "Voice Search Local". The unanswered calls attributed to Defendant came from the same number as answered calls.

28. A non-exhaustive list of telemarketing calls received from Defendant follows below:

| Date | Time | Number |
|---|---|---|
| 11/12/2025 | 8:30 AM | (772) 807-1045 |
| 11/12/2025 | 9:13 AM | (830) 228-0138 |
| 11/12/2025 | 9:49 AM | (325) 200-4195 |
| 11/12/2025 | 4:49 PM | (408) 637-4403 |
| 11/14/2025 | 1:45 PM | (830) 460-7539 |
| 11/17/2025 | 11:25 AM | (806) 590-5190 |
| 11/17/2025 | 11:27 AM | (855) 712-8351 |
| 11/18/2025 | 3:21 PM | (512) 758-6740 |
| 11/21/2025 | 8:30 AM | (888) 308-6906 |
| 11/21/2025 | 10:27 AM | (719) 203-9568 |
| 11/21/2025 | 4:27 PM | 919240035365 |
| 11/22/2025 | 11:16 AM | 919240035365 |
| 11/24/2025 | 11:36 AM | (830) 697-1962 |
| 11/24/2025 | 12:04 PM | 919240035365 |
| 11/24/2025 | 3:25 PM | (432) 889-0147 |
| 11/25/2025 | 12:12 PM | (830) 624-7252 |
| 11/26/2025 | 10:39 AM | (855) 712-8351 |
| 11/28/2025 | 8:53 AM | (210) 966-4702 |
| 12/2/2025 | 4:10 PM | (830) 955-7293 |

| | | |
|---|---|---|
| 12/3/2025 | 2:01 PM | (806) 696-1359 |
| 12/4/2025 | 3:44 PM | (726) 266-8337 |
| 12/4/2025 | 10:42 PM | (432) 271-0091 |
| 12/5/2025 | 1:08 AM | (469) 650-9242 |
| 12/5/2025 | 1:58 AM | (469) 650-9242 |
| 12/5/2025 | 12:06 PM | (866) 268-0973 |
| 12/5/2025 | 12:07 PM | (866) 268-0973 |
| 12/6/2025 | 10:25 AM | (830) 436-1653 |
| 12/8/2025 | 1:27 PM | (830) 469-2208 |
| 12/12/2025 | 12:56 PM | (806) 696-1359 |
| 12/12/2025 | 5:08 PM | (432) 697-1484 |
| 12/15/2025 | 10:46 AM | (254) 866-6321 |
| 12/16/2025 | 2:16 PM | (830) 226-4840 |
| 12/16/2025 | 3:56 PM | (806) 696-1923 |
| 12/17/2025 | 1:16 PM | (830) 985-3585 |
| 12/17/2025 | 2:55 PM | (806) 696-1535 |
| 12/18/2025 | 1:52 PM | (806) 696-1923 |
| 12/18/2025 | 5:55 PM | (830) 879-5996 |
| 12/19/2025 | 8:15 AM | (830) 714-4521 |
| 12/19/2025 | 4:30 PM | (830) 569-3550 |
| 12/22/2025 | 8:06 AM | (830) 224-3228 |
| 12/22/2025 | 8:36 AM | (830) 208-7114 |
| 12/22/2025 | 1:45 PM | (830) 333-8670 |
| 12/22/2025 | 2:17 PM | (830) 477-4394 |
| 12/22/2025 | 2:21 PM | (830) 239-9420 |
| 12/22/2025 | 3:52 PM | (830) 241-5732 |
| 12/22/2025 | 4:03 PM | (830) 250-8042 |
| 12/22/2025 | 4:22 PM | (830) 229-2438 |
| 12/23/2025 | 9:18 AM | (830) 229-2438 |
| 12/23/2025 | 10:38 AM | (830) 241-5732 |
| 12/23/2025 | 2:01 PM | (361) 223-6143 |
| 12/23/2025 | 2:06 PM | (830) 208-5038 |
| 12/23/2025 | 2:52 PM | (856) 556-0459 |
| 12/23/2025 | 5:18 PM | (806) 696-1923 |
| 12/24/2025 | 9:23 AM | (830) 208-4653 |
| 12/24/2025 | 10:46 AM | (361) 223-6267 |
| 12/24/2025 | 10:09 PM | (830) 237-3625 |
| 12/26/2025 | 9:00 AM | (830) 241-2405 |
| 12/26/2025 | 10:01 AM | (361) 223-5739 |
| 12/26/2025 | 10:55 AM | (210) 405-5187 |
| 12/26/2025 | 11:01 AM | (830) 241-5662 |
| 12/29/2025 | 11:19 AM | (830) 208-4653 |
| 12/29/2025 | 12:34 PM | (210) 338-9546 |
| 12/29/2025 | 1:07 PM | (480) 422-6400 |
| 12/29/2025 | 1:08 PM | (480) 422-6400) |

| | | |
|---|---|---|
| 12/29/2025 | 1:09 PM | (480) 422-6400 |
| 12/29/2025 | 1:13 PM | (210) 338-9546 |
| 12/29/2025 | 1:40 PM | (361) 223-4698 |
| 12/29/2025 | 4:21 PM | (361) 223-5749 |
| 12/30/2025 | 10:23 AM | (830) 584-2802 |
| 12/30/2025 | 11:10 AM | (361) 223-4698 |
| 12/30/2025 | 12:52 PM | (210) 338-9546 |
| 12/30/2025 | 1:39 PM | (210) 338-9546 |
| 12/30/2025 | 2:18 PM | (210) 338-9546 |
| 12/30/2025 | 4:12 PM | (361) 223-6143 |
| 12/30/2025 | 4:42 PM | (830) 215-0757 |
| 12/30/2025 | 5:13 PM | (806) 696-1306 |
| 12/31/2025 | 9:11 AM | (830) 208-0659 |
| 12/31/2025 | 3:12 PM | (830) 208-0667 |
| 1/2/2026 | 9:35 AM | (830) 202-8468 |
| 1/2/2026 | 10:16 AM | (830) 201-1249 |
| 1/2/2026 | 10:37 AM | (830) 848-3613 |
| 1/2/2026 | 11:06 AM | (830) 201-1249 |
| 1/2/2026 | 12:19 PM | (830) 203-3644 |
| 1/2/2026 | 1:12 PM | (830) 218-5002 |
| 1/2/2026 | 2:06 PM | (512) 200-8462 |
| 1/2/2026 | 2:25 PM | (210) 256-6089 |
| 1/2/2026 | 2:40 PM | (210) 265-6089 |
| 1/2/2026 | 2:40 PM | (210) 265-6089 |
| 1/2/2026 | 3:18 PM | (210) 265-6089 |
| 1/2/2026 | 3:56 PM | (830) 202-08468 |
| 1/5/2026 | 9:50 AM | (830) 202-2179 |
| 1/5/2026 | 10:52 AM | (830) 206-7940 |
| 1/5/2026 | 1:17 PM | (830) 259-1451 |
| 1/5/2026 | 1:18 PM | (830) 259-1451 |
| 1/5/2026 | 1:23 PM | (830) 226-7151 |
| 1/5/2026 | 2:10 PM | (325) 200-0122 |
| 1/6/2026 | 9:03 AM | (361) 223-4695 |
| 1/6/2026 | 10:01 AM | (830) 206-0262 |
| 1/6/2026 | 10:02 AM | (830) 206-0262 |
| 1/6/2026 | 10:24 AM | (830) 229-2438 |
| 1/6/2026 | 12:25 PM | (830) 201-6681 |
| 1/6/2026 | 12:26 PM | (830) 201-6681 |
| 1/6/2026 | 4:29 PM | (830) 202-8468 |
| 1/7/2026 | 9:02 AM | (361) 201-5409 |
| 1/7/2026 | 9:20 AM | (210) 201-1737 |
| 1/7/2026 | 9:21 AM | (210) 201-1737 |
| 1/7/2026 | 10:01 AM | (830) 580-4402 |
| 1/7/2026 | 10:28 AM | (325) 200-0236 |
| 1/7/2026 | 1:05 PM | (830) 239-9419 |

| | | |
|---|---|---|
| 1/7/2026 | 1:19 PM | (830) 202-5259 |
| 1/7/2026 | 1:19 PM | (830) 202-5259 |
| 1/7/2026 | 2:32 PM | (830) 875-7690 |
| 1/8/2026 | 9:45 AM | (830) 205-5409 |
| 1/8/2026 | 9:45 AM | (830) 205-5409 |
| 1/8/2026 | 10:20 AM | (830) 907-7637 |
| 1/8/2026 | 11:23 AM | (361) 201-5409 |
| 1/8/2026 | 11:24 AM | (830) 205-5373 |
| 1/8/2026 | 11:25 AM | (830) 205-5373 |
| 1/8/2026 | 2:46 PM | (830) 206-0697 |
| 1/8/2026 | 2:47 PM | (830) 206-0697 |
| 1/8/2026 | 3:09 PM | (830) 224-3228 |
| 1/9/2026 | 10:35 AM | (810) 379-1518 |
| 1/9/2026 | 12:06 PM | (830) 772-4850 |
| 1/9/2026 | 12:37 PM | (830) 203-6111 |
| 1/9/2026 | 12:38 PM | (830) 203-6111 |
| 1/9/2026 | 1:46 PM | (830) 205-9108 |
| 1/10/2026 | 3:57 PM | (830) 264-5236 |
| 1/10/2026 | 3:58 PM | (830) 264-5236 |
| 1/10/2026 | 3:59 PM | (830) 264-5236 |
| 1/11/2026 | 1:00 PM | (830) 965-1041 |
| 1/11/2026 | 1:37 PM | (830) 201-6215 |
| 1/11/2026 | 3:12 PM | (830) 239-9419 |
| 1/12/2026 | 9:43 AM | (830) 203-6603 |
| 1/12/2026 | 9:44 AM | (830) 203-6603 |
| 1/12/2026 | 12:03 PM | (830) 208-7820 |
| 1/12/2026 | 12:04 PM | (830) 208-7820 |
| 1/13/2026 | 8:58 AM | (830) 689-5364 |
| 1/13/2026 | 8:59 AM | (830) 689-5364 |
| 1/13/2026 | 11:35 AM | (830) 208-4418 |
| 1/13/2026 | 2:20 PM | (830) 200-0097 |
| 1/13/2026 | 5:13 PM | (830) 200-0097 |
| 1/14/2026 | 9:19 AM | (830) 200-0897 |
| 1/14/2026 | 10:41 AM | (830) 200-0897 |
| 1/15/2026 | 9:36 AM | (830) 202-8398 |
| 1/15/2026 | 12:10 PM | (830) 206-1560 |
| 1/15/2026 | 2:22 PM | (830) 239-9420 |
| 1/15/2026 | 2:30 PM | (830) 201-7396 |
| 1/15/2026 | 4:42 PM | (830) 239-9419 |
| 1/18/2026 | 9:13 AM | (830) 239-9420 |
| 1/18/2026 | 10:36 AM | (830) 208-5946 |
| 1/19/2026 | 9:06 AM | (830) 205-4293 |
| 1/19/2026 | 1:02 PM | (830) 205-4767 |
| 1/19/2026 | 3:12 PM | (830) 201-3301 |
| 1/21/2026 | 9:23 AM | (830) 206-9124 |

29. Furthermore, Defendant has placed at least sixteen (16) "ringless" prerecorded voicemails to Plaintiff's cell phone. Those ringless voicemails were left at the following times:

| **Date** | **Time** | **Number** |
|---|---|---|
| 12/5/2025 | 12:07 PM | Not identified |
| 12/14/2025 | 2:16 PM | (800) 922-0204 |
| 1/2/2026 | 10:16 AM | (830) 201-1249 |
| 1/2/2026 | 10:37 AM | (830) 848-3613 |
| 1/6/2026 | 12:26 PM | (830) 201-6681 |
| 1/7/2026 | 1:19 PM | Not identified |
| 1/8/2026 | 9:45 AM | Not identified |
| 1/8/2026 | 11:25 AM | Not identified |
| 1/8/2026 | 2:47 PM | Not identified |
| 1/9/2026 | 12:38 PM | Not identified |
| 1/9/2026 | 1:46 PM | Not identified |
| 1/12/2026 | 9:44 AM | Not identified |
| 1/12/2026 | 12:04 PM | Not identified |
| 1/12/2026 | 1:55 PM | Not identified |

30. In those calls, the message stated the call was from "Voice Search Local" and suggesting Plaintiff sign up for its marketing services.

31. Plaintiff can tell those messages were pre-recorded because the voice sounded computerized, and the language, tone and cadence was identical among various calls.

32. In the calls from Defendant which Plaintiff answered, she repeatedly reiterated her demand that the calls stop; however, Defendant has continued to place phone calls and ringless voicemails to her phone.

33. On one instance in or around December of 2025, when Plaintiff restated her instruction to stop calling, the caller told her that VSL employed numerous individuals to make calls. While the caller advised he could personally stop calling her, he was unable to stop others from the company from calling her.

34. On several other occasions thereafter, Defendant's representatives responded to Plaintiff's demands and pleas for solitude with rude, threatening, or dismissive remarks.

35. After Defendant knew the calls were unwanted, the calls were made for the purpose of harassing Plaintiff.

36. The calls in this campaign were not made for "emergency purposes," but rather for solicitation purposes.

37. Plaintiff explicitly revoked her business relationship with Defendant and any consent she may have given to be contacted numerous times.

38. At the time of the filing of this Complaint, Plaintiff is still receiving multiple calls per day from Defendant. Plaintiff therefore, expects violations to continue to accrue after suit is initiated.

39. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation and a sense that her privacy had been invaded by Defendant.

40. Additionally, despite the requirement that telephone solicitors placing calls to Texas residents register with the State of Texas, the Texas Secretary of State Records do not reflect any registration for Defendant.

**DIRECT AND VICARIOUS LIABILITY**

41. Without the benefit of discovery, Plaintiff understands and therefore alleges Defendant directly placed the calls at issue.

42. However, if some or all of the calls were placed by third-party/parties on behalf of Defendant, in the alternative, Defendant is vicariously liable for those calls.

43. On May 9, 2013, the FCC determined that telemarketers like Defendant cannot avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside

> of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

44. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id.* at 6587 n. 107.

45. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

46. If Defendant directly sent the calls at issue to Plaintiff and the putative class members, Defendant is directly liable for the placing of those calls.

47. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers.

48. If Defendant did not directly send the calls to the putative class members, Defendant's third-party telemarketers had actual and/or apparent authority to act on behalf of Defendant.

49. Likewise, on information and belief, Defendant also ratified its agents' violations of the TCPA by accepting proceeds from sales imitated by unlawful telemarketing communications.

50. Defendant controlled or had the right to control the marketing activities of those acting on its behalf.

51. Defendant acted as a principal to telemarketing agent(s) who were acting on their behalf.

52. Defendant is not permitted under the law to outsource and contract their way out of liability by directing and benefitting from their agents' TCPA violations.

53. For the count identified below, if Defendant directly sent the calls at issue, they are directly liable. Alternatively, to the extent any calls were placed by a third-party agent(s) acting on Defendant's behalf, Defendant is vicariously liable for those unlawful communications.

## CLASS ALLEGATIONS

54. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

55. Plaintiff seeks to represent the following classes:

> **Internal Do-Not-Call (IDNC) Class:** All persons in the United States who received one or more solicitation calls/texts/voicemails to their cellular or residential telephone numbers, which were placed by or on behalf of Defendant, after informing Defendant that they did not wish to be contacted again, from four years prior to the date of this complaint through the date the Court certifies the class.

> **Pre-recorded Voice (PRV) Class:** All persons in the United States who received one or more calls or voicemails to their cellular or residential telephone numbers which were placed by or on behalf of Defendant, where voice messages using prerecorded or artificial voice technology played in said call(s) or voicemail(s), from four years prior to the filing of this complaint until the date the Court certifies the class.

> **Texas Registration Certificate (TRC) Class:** All persons in the United States who received one or more marketing calls or voicemails from Defendant (or someone acting on its behalf), to their cellular or residential telephone numbers with a Texas area code, and at such time Defendant had not obtained a registration certificate

from the Office of the Secretary of State.

56. Excluded from all classes are any entity in which Defendant have a controlling interest or which has a controlling interest in Defendant, and Defendant's owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to amend or modify the class definitions consistent with the record.

57. The putative class members' identities are readily ascertainable from Defendant's records or records within Defendant's control.

58. Plaintiff's claims are typical of the class members, as all are based on the same facts and legal theories.

59. Plaintiff will fairly and adequately protect the interests of the Classes defined in this complaint. Plaintiff will fairly and adequately protect the interests of the class members insofar and Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter.

60. Neither the Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this class action lawsuit.

61. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor his attorneys have any interests which might cause them not to vigorously pursue this action.

62. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a well-defined community interest in the litigation.

63. Class members are so numerous that the individual joinder of all class members is

impracticable. There are no likely difficulties to be encountered in managing this case as a class action.

64. Common questions of law and fact exist to all class members and predominate over questions affecting only individual class members. Common legal and factual questions include, but are not limited to the following:

a. Whether Defendant placed calls and voicemails to Plaintiff and the class members after receiving a request not to be contacted;

b. Whether Defendant placed prerecorded voice calls to Plaintiff and the class members;

c. Whether the calls and voicemails were "solicitations" as defined by 47 U.S.C. § 227(a)(4);

d. Whether Defendant employs proper internal mechanisms to record and honor consumer do-not-call requests;

e. Whether Defendant employs proper internal mechanisms to obtain consumers' prior express consent before placing pre-recorded voice messages;

f. Whether Defendant's conduct violates 47 U.S.C. § 227(b) and the corresponding rules and regulations implementing the TCPA;

g. Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

65. Plaintiff and the putative class members have claims arising out of Defendant's uniform course of conduct, namely improperly placing solicitation calls and prerecorded voicemails to Plaintiff and the putative class members.

66. The class action mechanism is superior to other available means for the fair and efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and

contradictory judgments.

67. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

68. Based on discovery and further investigation, Plaintiff may, in addition to moving for class certification, use modified definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23. Such modified definitions may be more expansive to include consumers excluded from the foregoing definitions.

69. Based on information and belief, Defendant continues to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendant's conduct and to prevent irreparable harm to Plaintiff and class members for which they have no adequate remedy at law.

**COUNT I**
**FAILURE TO IMPLEMENT INTERNAL DO-NOT-CALL POLICIES**
**47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**

70. Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

71. The FCC regulations prescribed under Section 227(c) require companies like Defendant, who engage in telemarketing to institute "procedures for maintaining a list of persons who request not to receive telemarketing calls/texts on or behalf of that person or entity." *See* 47 C.F.R. § 64.1200(d).

72. These procedures must meet several minimum standards, including, but not limited

to:

> **(6)** ***Maintenance of do-not-call lists.*** A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls/text. A do-not-call request must be honored for 5 years from the time the request is made.
>
> *See* 47 C.F.R. § 64.1200(d)(1)-(6).

73. Defendant failed to maintain and/or implement these minimum standards by repeatedly calling Plaintiff after she requested that Defendant to stop calling.

74. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers that should have been placed on Defendant's internal do not call list. *See* 47 U.S.C. §§ 227(c)(5)(A).

75. By making solicitation calls to the phones of Plaintiff his number should have been placed on Defendant's agent internal do not call list, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c) and the TCPA's corresponding regulations.

76. Defendant knew or should have known that Plaintiff did not wish to receive calls. Accordingly, the violations were willful.

77. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and treble damages.

**COUNT II**
**PRERECORDED VOICE MESSAGES TO CELL PHONES**
**47 U.S.C. § 227(b)**

78. Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

79. The TCPA provides, in part that: "It shall be unlawful … to make any call (other than a call made for emergency purposes or made with the prior express consent of the called

party) (…) to any telephone number assigned to a (…) cellular telephone (…)" 47 U.S.C. § 227(b)(1)(A)(iii).

80. Prerecorded voice calls that are placed for solicitation purposes cannot be placed without first obtaining the recipient's "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

81. Even if the calling party initially has express written consent to place calls with pre-recorded messages, that consent can be revoked at any time and by any reasonable means and must be honored so long as the consumer "clearly expresses a desire not to receive further messages." 47 C.F.R. § 64.1200(a)(10); *Alvarez v. Medicredit, Inc.*, No. 5:17-CV-195-DAE, 2018 WL 6430830 2018 U.S. Dist. LEXIS 226740, at *24 (W.D. Tex. Aug. 2, 2018) (Ezra, J.); *Cherkaoui v. Santander Consumer USA, Inc.*, No. H-13-467, 2013 U.S. Dist. LEXIS 186872, 2013 WL 2328769, at *3 (S.D. Tex. June 7, 2013).

82. The term "prior express written consent" means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called or texted advertisements or telemarketing messages using (…) an artificial or prerecorded voice (…) and the agreement must identify the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. § 64.1200(f)(9).

83. By placing prerecorded voice calls to Plaintiff and the putative class members without having valid "prior express written consent", Defendant violated the TCPA, 47 U.S.C. § 227(b)(1), and the TCPA's corresponding regulations.

84. The penalty for each call placed in violation of the TCPA's restrictions on placing such prerecorded voice calls is $500 and up to $1,500 per call, if the violation is determined to be willful. *See* 47 U.S.C. § 227(b)(3).

85. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA. *See* 47 U.S.C. §§ 227(b)(3)(A).

86. Defendant and/or those acting on their behalf willfully violated the TCPA when placing prerecorded voice calls to Plaintiff and the putative class members' cell phones.

87. Plaintiff and the putative class members are entitled to damages of $500 per violation for each prerecorded voice call placed by Defendant and/or those acting on their behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendant or those acting on its behalf willfully violated the TCPA.

**COUNT III**
**VIOLATIONS OF THE TEXAS BUSINESS & COMMERCIAL CODE**
**TX BUS & COM § 302.101 *et seq***

88. Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

89. Plaintiff received calls from Defendant on her cell phone in Texas with an "830" area code which is associated with the State of Texas.

90. Section 302.101 of the Texas Business & Commerce Code prohibits sellers from engaging in telephone solicitation from a location in this state or to a purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

91. Defendant violated § 302.101 of the Texas Business & Commercial Code when it or its representatives engaged in continuous and repetitive telephone solicitation of Plaintiff without obtaining a registration certificate from the Office of the Secretary of State.

92. Section 302.302(a) of the Texas Business & Commerce Code provides that a person

who violates this chapter is subject to a civil penalty of no more than $5,000 for each violation. Furthermore, Section 302.302(d) provides that the party bringing the action is also entitled to recover all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

## PRAYER FOR JUDGMENT

**WHEREFORE,** Plaintiff, Naturelle Aleman, individually, and on behalf of all others similarly situated, requests the Court grant the following relief against Defendant, as follows:

a. Enter an order against Defendant pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Plaintiff as the class representative;

b. Enter an order appointing Kimmel & Silverman, P.C. as class counsel;

c. Enter judgment in favor of Plaintiff and the IDNC Class for all damages available under the TCPA, including actual and statutory damages per violation of 47 U.S.C. § 227(c) and consistent with proof at trial;

d. Enter judgment in favor of Plaintiff and the PRV Class for all damages available under the TCPA, including actual and statutory damages per violation of 47 U.S.C. § 227(b) consistent with proof at trial;

e. Enter judgment in favor of Plaintiff and the TRC Class for all damages available under the Texas Business & Commerce Code, including statutory damages of $5,000 per violation consistent with proof at trial;

f. Enter a judgment in favor of Plaintiff and the Classes that enjoins Defendant from violating the TCPA's regulations in the manner and/or using the means as alleged above and consistent with proof;

g. Award Plaintiff and the Classes such further and other relief the Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: January 27, 2026

*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq.
KIMMEL & SILVERMAN, P.C.
30 East Butler Ave.
Ambler, PA 19002

Telephone: (267) 468-5374
Facsimile: (877) 600-2112
jginsburg@creditlaw.com
teamkimmel@creditlaw.com

*Attorneys for Plaintiff, individually, and on behalf of all others similarly situated*